IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

David M. Joseph, : Case No. 3:07-CV-3474

    Plaintiff, :

    v. :

Great Lakes Reinsurance (UK) PLC, et al., : **MEMORANDUM DECISION AND ORDER**

    Defendants. :

The parties have consented to have the undersigned Magistrate enter judgment in this case in which Plaintiff seeks restitution and recovery resulting from an alleged breach of a contract.  Pending is a Motion for Summary Judgment filed by Defendant Great Lakes Reinsurance, United Kingdom, Public Limited Company (Great Lakes) (Docket No. 71), Plaintiff's Opposition (Docket No. 72) and Defendant's Reply (Docket No. 73).  For the reasons that follow, the Motion for Summary Judgment is denied.

## I.  THE PARTIES.

    1.  Plaintiff is a resident of Lucas County, Ohio (Docket No. 1, ¶ 1).

    2.  Defendant Great Lakes is a specialist provider of insurance, organized under the laws of the United Kingdom.  Its principal place of business is in London, England (Docket No. 1, ¶ 2).

    3.  Defendant Alejandro Nieves (Nieves) is a resident of the State of Florida (Docket No. 1, ¶ 3).

    4.  Defendant Daniel Lopez (Lopez) is a resident of the State of Florida (Docket No. 1, ¶ 4).

## II.  JURISDICTION

Plaintiff is a resident of Ohio.  Defendant Great Lakes is organized under the laws of the United Kingdom.  Defendants Lopez and Nieves are residents of Florida.  Defendants waived any personal jurisdiction defenses (Docket No. 23).  The amount of controversy exceeds $75,000.  This Court has jurisdiction over the matters presented in this case pursuant to 29 U. S. C. § 1332(a)(3).

## III.  FINDINGS OF FACT

On May 16, 2002, Chris Bingham entered into a "Vessel Condition Purchase Agreement" for the purchase of a preowned 1998 Baja Outlaw, a high performance boat and trailer (hereafter "the boat"), from Plaintiff for the price of $115,000.  Under the terms of the agreement, Chris Bingham received possession of the boat for which he agreed to make 48 monthly payments to Global Financial Network, pay all taxes, licenses, permits and special assessments and purchase and keep in force, throughout the term of the agreement, extended insurance coverage in Plaintiff's name with a loss payable clause and other endorsement making the proceeds payable to Plaintiff, and insurance coverage for loss or damage to the hull and power generating equipment, comprehensive fire and theft insurance, liability insurance and protection indemnity and lien holder insurance (Docket No. 71, Exhibit 9).  Chris Bingham was unable to make the payments to Key Bank after the expiration of a couple of years (Docket No. 71, Exhibit 17, p. 50-51).

A brokerage firm in Michigan found a purchaser, "Russel Harder", a California resident, to assume Chris Bingham's rights of ownership and to make the payments (Docket No. 71, Exhibit 17, p. 51).  On February 18, 2005, Russel Harder purchased the boat from David Joseph for $105,000.  Russel Harder agreed to purchase and keep in force, fire and extended coverage insurance in Plaintiff's name as the respective interests may appear throughout the term of the agreement.  Russel Harder was also obligated to keep in force insurance coverage for loss or damage to the hull and power generating equipment,

comprehensive fire and theft insurance, liability insurance and protection indemnity and lien holder insurance (Docket No. 71, Exhibit 10). Russel Harder had possession for a few weeks and then the vessel "went missing" (Docket No. 71, Exhibit 17, p. 52.

Eric Brashear was contacted by a Michigan brokerage firm about the purchase of the boat which was purportedly in California. Mr. Brashear contacted Plaintiff directly about purchasing the boat (Docket 71, Exhibit 17, p. 54). On May 10, 2005, Plaintiff endorsed a partnership vessel purchase agreement for the sale of the Baja to Eric Brashear. Mr. Brashear, too, agreed to keep in force insurance coverage for loss or damage to the hull and power generating equipment, comprehensive fire and theft insurance, liability insurance and protection indemnity and lien holder insurance (Docket No. 71, Exhibit 11). With Plaintiff's consent, Mr. Brashear brokered the vessel to Defendant Lopez (Docket No. 71 Exhibit 17, p. 63).

On May 14, 2006, Plaintiff endorsed a partnership vessel agreement for the sale of the Baja to Defendant Lopez. Defendant Lopez agreed to keep in force extended coverage insurance in Plaintiff's name with a loss payable clause or other endorsement making the proceeds payable to Plaintiff (Docket No. 71, Exhibit 12). Defendant Lopez took possession of the vessel on May 14, 2006 (Docket No. 71, Exhibit 17, p. 72).

On June 1, 2006, Defendant Lopez, representing himself as owner of the boat, brokered a partnership vessel agreement with Defendant Nieves. Under the purchase agreement, Defendant Lopez was responsible for payment of the loan to Key Bank. Defendant Nieves had full custody, control and 100% liability for any and all use of the vehicle for the purchase price of $52,500. Defendant Nieves agreed to obtain and keep in force a fire and extended insurance coverage policy in Defendant Lopez's name with a loss payable clause or other endorsement making the proceeds payable to Defendant Lopez (Docket No. 71, Exhibit 8).

Defendant Nieves' spouse consulted with Avante Insurance Agency (Avante), a marine insurance

broker, to purchase a policy of insurance on the boat (Docket No. 71, Exhibit 16, p. 24). On June 6, 2006, Yanet Cisneros, a customer service representative at Avante, presented an application seeking a quotation for hull, personal property and liability coverage to Hull & Company (Hull), a duly licensed surplus lines broker doing business in Florida and specializing in marine insurance coverage (Docket No. 1, ¶ 10; Docket No. 71, Exhibit 4; Exhibit 14, ¶ 19 & Exhibit 17, pp. 11-13). Personnel at Hull interfaced with T. L. Dallas (Special Risks) Ltd., (TLD), an underwriter acting on the interest of the insured (Docket No. 71, Exhibit 14, ¶ 22; Docket No. 71, Exhibit 14, p. 10).

On the same date, Paul Young, a broker employed by Houlder Insurance Services (Marine), an independent broker located in London who provides insurance for shipowners, submitted the application seeking a quote for marine insurance to TLD (Docket No. 71, Exhibit 14, ¶ 11, www.houlder.co). The application named Defendant Nieves as the insured. Neither Plaintiff nor Defendant Lopez is specified as a beneficial owner or loss payee (Docket No. 71, Exhibit 5).

On June 14, 2006, Ariel Cabrera, an independent surveyor for the Society of Accredited Marine Surveyors, prepared an evaluation of the Baja to determine the condition of the engines, gears, pumps, heat exchangers and coolers (Docket No. 72, Exhibit 1, p. 3/21). The overall vessel rating was average and its replacement costs were estimated at $192,500 United States Dollars (Docket No. 72, Exhibit 1, pp. 15/21-16/21).

On June 7, 2007, Liam Gilhooly, representing TLD, presented to Paul Young, an "Emailed Quotation" subject to payment of a premium, photograph of the vessel, satisfactory application form, valuation, survey, a letter of compliance with survey recommendations and confirmation of previous vessels owned (Docket No. 71, Exhibit 6).

On June 19, 2006, Defendant Nieves endorsed an application for "yacht insurance" on which he is

4

the sole insured and there is no designated loss payee (Docket No. 71, Exhibit 4).

On July 24, 2006, Paul Young requested, through electronic mail, that TLD bind the coverage for Plaintiff consistent with the quotation (Docket No. 71, Exhibits 7 & 14, ¶ 7). TLD procured coverage through Defendant Great Lakes for the hull as well as protection and indemnity insurance from July 21, 2006 through July 21, 2007 (Docket No. 71, Exhibit 3, p. 3 of 15).

Defendant Great Lakes was notified on May 7, 2007, that the vessel had been stolen. Defendant Great Lakes initiated an investigation (Docket No. 1, ¶ 14). T. L. Dallas also ordered an investigation (Docket No. 71, ¶ 27; Docket No.71, Exhibit 14, ¶ 32).

## IV. PROCEDURAL BACKGROUND

Defendant Great Lakes filed a declaratory judgment action in the Southern District of Florida. The Clerk's Office for the Southern District of Florida advised that the action was dismissed (Docket No. 1, ¶s 17 & 18).

Plaintiff filed a complaint in this Court (Docket No. 1). Defendants Nieves and Lopez filed an answer (Docket No. 13). Defendant Great Lakes filed an answer and counterclaim against Plaintiff and cross-claims against Defendants Nieves and Lopez (Docket No. 24). Plaintiff filed a response to the counterclaim of Defendant Great Lakes (Docket No. 53). Pending is Defendant Great Lakes' Motion for Summary Judgment (Docket No. 71).

## V. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004) (*citing* FED. R. CIV. P. 56(c)). In deciding a motion for summary judgment, we view the

factual evidence and draw all reasonable inferences in favor of the non-moving party. *Id.* (*citing National Enterprises v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997)). To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Id.* (*citing Klepper v. First American Bank,* 916 F.2d 337, 341-342 (6th Cir. 1990) (*citing Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2552 (1986)). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* (*citing Anderson v. Liberty Lobby*, 106 S. Ct. 2505, 2552 (1986).

The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Ferrar v. Federal Kemper Life Assurance Company,* 198 F. Supp.2d 940, 944 (S. D. Ohio 2002) (*citing Celotex*, 106 S. Ct. at 2552; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (*quoting Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir. 1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 944-945 (*citing Anderson, supra*, 106 S. Ct. at 2511) (*quoting* FED. R. CIV. P. 56(e)). Once the moving party meets his or her initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Id.* (*citing Talley v. Bravo Pitino Restaurant, Limited,* 61 F.3d 1241, 1245 (6th Cir. 1995)).

## VI. DISCUSSION

Defendant Great Lakes alleges that in the application for "yacht insurance", Defendant Nieves made material misrepresentations and therefore, the marine insurance policy issues is void *ab initio*. Defendant

seeks to rescind coverage.

Plaintiff argues that the application is ambiguous with respect to proof of ownership of the boat. Since Defendant Great Lakes cannot establish that Defendant Nieves's purported misrepresentations were material, Defendant Great Lakes may not avoid its obligation to pay under the terms of the contract of insurance. In the insuring instrument, the parties agreed that this dispute is subject to the substantive laws of the State of New York (Docket No. 71, Exhibit 3, p. 15 of 15).

As a general rule, the effect of rescission is to void the contract *ab initio*. Under New York's laws, an insurer may avoid an insurance contract if the insured made a false statement of fact as an inducement to enter into the contract and the misrepresentation was material. *Cruz v. New Millennium Const. & Restoration Corporation,* 17 A.D.3d 19, 21, 793 N.Y.S.2d 548, 550 (N. Y. A. D. 3 Dept.,2005) (*see* Insurance Law § 3105 [a], [b]). Rescission is an available remedy even if the material misrepresentation was innocently or unintentionally made. *Curanovic v. New York Central Mutual Fire Insurance Company,* 307 A.D. 2d 435, 436-437; 762 N.Y. S. 2d 148, 150 (N. Y. A. D. 2003) (*citing Nationwide Mutual Fire Insurance Company v. Pascarella*, 993 F. Supp. 134, 136 (1998) [citation omitted]; see *Holloway v. Sacks & Sacks,* 275 A.D.2d 625, 713 N.Y.S.2d 162 (N. Y. A. D. 2000), *lv. denied* 95 N.Y. 2d 770, 745 N.E.2d 394 (N. Y. 2000); *Meagher v. Executive Life Insurance Company of New York,* 200 A.D.2d 720, 720, 607 N.Y.S.2d 361 (N.Y.A.D. 1994); *Tennenbaum v. Insurance Corporation of Ireland,* 179 A.D.2d 589, 592, 579 N.Y.S.2d 351 (N.Y.A.D. 1992); *see also Mutual Benefit Life Insurance Company v. JMR Electronics,* 848 F.2d 30, 32 (2nd Cir. 1988)).

Under McKinney's Consolidated Laws of New York Annotated § 3204, statements made on an application for insurance by a prospective insured are deemed representations. A representation is "a statement as to a past or present fact, made to the insurer, or by the authority of, the applicant for insurance

or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. MCKINNEY'S CONSOLIDATED LAWS OF NEW YORK ANNOTATED § 3105(a) (Thomson Reuters 2009). A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false. MCKINNEY'S CONSOLIDATED LAWS OF NEW YORK ANNOTATED § 3105(a) (Thomson Reuters 2009). No misrepresentation shall form the basis to avoid any contract of insurance unless such misrepresentation is material. MCKINNEY'S CONSOLIDATED LAWS OF NEW YORK ANNOTATED § 3105(b) (Thomson Reuters 2009).

To establish materiality of misrepresentations as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins or rules pertaining to similar risks, to establish that it would not have issued the same policy if the correct information had been disclosed in the application. *Curanovic, supra*, 307 A.D. at 437, 762 N.Y.S. at 150 (*see Carpinone v. Mutual of Omaha Insurance Company*, 265 A.D.2d 752, 754, 697 N.Y. S. 2d 381, 383 (1999); *see also* INSURANCE LAW § 3105(c); *Iacovangelo v. Allstate Life Insurance Company of New York,* 300 A.D.2d 1132, 1133, 750 N.Y.S.2d 920 (N.Y.A.D. 2002)). Conclusory statements by insurance company employees, unsupported by documentary evidence, are insufficient to establish materiality as a matter of law. *Id*. (*see Carpinone, supra*, at 755, 697 N. Y. S.2d at 384; *but cf. North Atlantic Life Insurance Company of America v. Katz,* 163 A.D. 2d 283, 285, 557 N.Y.S.2d 150, 152 (N.Y.A.D. 1990)). Otherwise, the issue of materiality is generally a question of fact for the jury. *Tyras v. Mount Vernon Fire Insurance Company*, 36 A.D. 3d 609, 610, 828 N.Y. S. 2d 448, 449 (N.Y.A.D. 2007) (*citing Parmar v. Hermitage Insurance Company*, 21 A.D. 3d 538, 800 N.Y.S. 2d 726 (N.Y.A.D. 2005)).

An answer to an ambiguous question on an application for insurance cannot be the basis of a claim of misrepresentation by the insurer against its insured where a reasonable person in the insured's position

could rationally have interpreted the question as he or she did.  *Fanger v. Manhattan Life Insurance Company of New York, New York,* 273 A.D.2d 438, 439, 709 N.Y.S.2d 622, 624 (N.Y.A.D. 2000) (*see, e.g., Nadel v. Manhattan Life Insurance Company,* 211 A.D. 2d 900, 621 N. Y. S. 2d 180 (N.Y.A.D. 1995); *see also, Berger v. Manhattan Life Insurance Company,* 805 F. Supp. 1097, 1104 (S.D.N.Y. 1992)).  Whether or not a contract provision is ambiguous is a question of law to be resolved by a court.  *Id.* (*see, e.g.,* V*an Wagner Advertising Corporation. v. S & M Enterprises,* 67 N.Y.2d 186, 191, 492 N.E.2d 756 (N.Y. 1986); *Sutton v. East River Savings Bank,* 55 N.Y.2d 550, 554, 435 N.E.2d 1075 (N.Y. 1982); *Kailasanathan v. Mysorekar,* 234 A.D.2d 425, 651 N.Y.S. 2d 124 (N.Y.A.D. 1996)).

The yacht application in this case is not so plain that any applicant would easily comprehend that he or she was required to disclose ownership of the boat.  The application requests that the applicant identify the "insured".  The beneficial owner was to be identified if the policy was to be issued in a company name.  There is nothing on the application that requires the applicant to identify the owner of the vessel that was to be insured.  Further, Defendant Great Lakes relies on the affidavit and/or deposition of Beric Anthony Usher, managing director and senior underwriter for TLD.  He concludes that a reasonable or prudent marine underwriter would not have agreed to issue any policy if the current ownership of the boat, the chain of ownership and the financial terms had not been disclosed (Docket No. 71, Exhibit 14, ¶s 35, 36 & 37 and Exhibit 15).  However, Mr. Usher failed to identify a written underwriting policy or any specific applicants with similar histories that were denied coverage by Defendant Great Lakes.  Defendant Great Lakes has not proffered other evidence of an underwriting policy on the topic of misrepresentation.  Thus, Defendant Great Lakes cannot avoid the insurance contract on the basis that Defendant Nieves misrepresented the owner of the boat.

Next, Defendant Great Lakes argues that Defendant Nieves disclosed that he paid $109,000 for the

boat.  The Magistrate agrees that a reasonable person would not have interpreted the question as Defendant Nieves did.  The inference is that Defendant Nieves consummated the purchase of the boat on May 20, 2006, for $109,000.  Defendant Nieves' answer to the purchase price constitutes a misrepresentation of fact.  However, Defendant Great Lakes has not demonstrated that the misrepresentation was material as a matter of law.  Again, Defendant Great Lakes relies on the affidavit and/or deposition of Beric Usher.  He concludes that TLD's decision to provide a quotation for insurance was based, in part, on Defendant Nieves' representation that the boat was purchased for $109,000 (Docket No. 71, Exhibit 14, ¶ 11).  However, Mr. Usher failed to identify a written underwriting policy or any specific applicants with similar histories that were denied coverage by Defendant Great Lakes.  Defendant Great Lake has not proffered other evidence of an underwriting policy on the topic of misrepresentation.

Upon review of the factual evidence and drawing all reasonable inferences in Defendant Nieves' favor, Defendant Great Lakes is not entitled to judgment on the basis that Defendant Nieves made **material** misrepresentations in the application for insurance.  Defendant Great Lakes' Motion for Summary Judgment is denied.

### VII.  CONCLUSION

For these reasons, the Magistrate denies Defendant Great Lakes' Motion for Summary Judgment.  This case is scheduled for a telephone conference on **Tuesday, March 23, 2010, at 3:00 p.m**.  All parties and counsel should be available by telephone.  The Court will place the call.

**IT IS SO ORDERED**.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   March 16, 2010