**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| David M. Joseph, | : | Case No. 3:07-CV-3474 |
| Plaintiff, | : | |
| v. | : | |
| Great Lakes Reinsurance (UK) PLC, et al., | : | **MEMORANDUM DECISION AND ORDER** |
| Defendants. | : | |

The parties consented to have the undersigned Magistrate enter judgment in this case. Previously the undersigned Magistrate rendered a judgment denying Defendant Great Lakes Reinsurance's (Great Lakes) Motion for Summary Judgment. Defendant Great Lakes seeks relief from that judgment. Pending is Defendant Great Lakes' Motion for Rehearing, Plaintiffs' Opposition and Motion to Alter or Amend and Defendant Great Lakes' Reply and Supplemental authority (Docket Nos. 78, 79, 80 & 83). For the reasons that follow, the Motion for Rehearing is granted.

**I.  THE PARTIES.**

Plaintiff, an entrepreneur with interests in various businesses, is a resident of Lucas County, Ohio (Docket No. 1, ¶ 1; Docket No. 71, Exhibit 17, pp. 3-4 of 30).

Defendant Great Lakes, a specialist in providing reinsurance, is organized under the laws of the

United Kingdom. Its principal place of business is in London, England (Docket No. 1, ¶ 2).

Defendant Alejandro Nieves (Nieves), an electrician, is a resident of the State of Florida (Docket No. 1, ¶ 3).

Defendant Daniel Lopez (Lopez) is a resident of the State of Florida (Docket No. 1, ¶ 4).

## II. JURISDICTION

Under 28 U. S. C. § 1332(a)(3), this Court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the value of the sum of $75,000, exclusive of interest and costs and is between citizens of different states and in which citizens or subjects of a foreign state are additional parties. Here, the amount of controversy exceeds $75,000, exclusive of interest and costs. The matter is between citizens of different states and a subject of a foreign state. Plaintiff is a resident of Ohio, Defendant Great Lakes is organized under the laws of the United Kingdom and Defendants Lopez and Nieves are residents of Florida. Accordingly, this Court has jurisdiction over the case and controversy presented by the parties in this case.

## III. FINDINGS OF FACT

In 1998, Plaintiff purchased a 1998 36 foot Baja Outlaw, a high performance boat, for approximately $135,000 to $140,000. He subsequently purchased a trailer (Docket No. 71, Exhibit 17, pp. 6, 8). Key Bank financed the entire purchase of the Baja (Docket No. 71, p. 8). Under the terms of the financing agreement with Key Bank, Plaintiff was obligated to maintain vessel insurance. From 1998 to 2002 the vessel was insured pursuant to the agreement (Docket No. 71, Exhibit17, p. 9).

For approximately four years, Plaintiff was satisfied with the boat; however, in 2002, he decided to sell his boat. Plaintiff's personal efforts to sell the Baja by advertising on line and in the newspaper were unsuccessful; consequently, Plaintiff sought a brokerage firm to sell the vessel (Docket No. 17, Exhibit 17,

pp. 7-9). Ultimately Plaintiff found a Michigan brokerage company that specialized in promoting non-traditional methods of selling vessels. Specifically, Plaintiff was seeking a non-traditional buyer who would assume responsibility for the payments and insure the boat while Plaintiff retained any interest in the boat (Docket No. 71, Exhibit 17, p. 11).

On May 16, 2002, Chris Bingham executed a "Vessel Condition Purchase Agreement" in which he agreed to purchase the Baja for $115,00 and name the buyer as primary driver with the seller and lien holder Key Bank as the additional insured and loss payee (Docket No. 71, Exhibit 9). Effective May 11, 2002, Mr. Bingham was entitled to receive possession of the vessel so long as he did not default on the terms of the purchase agreement. After a couple of years, Chris Bingham could no longer make payments to Key Bank (Docket No. 71, Exhibit 17, p. 13). When Chris Bingham stopped making payments, the Michigan brokerage firm made payments from reserve funds. Plaintiff, too, made payments for a short period of time.

The Michigan brokerage firm recommended Russel Harder, a California resident, as a successor to Chris Bingham's interest (Docket No. 71, Exhibit 17, pp. 12-13 of 30). On February 18, 2005, Russell Harder entered into a similar partnership vessel purchase agreement under which he agreed to pay $105,000 and name the buying partner as the primary operator of the boat with the selling partner, Plaintiff, as the additional insured and the lien holder as loss payee. Russell Harder was awarded full custody, control and 100% liability for any and all use of the Baja (Docket No. 71, Exhibit 10). After a few weeks in his custody, the 1998 Baja was reported missing (Docket No. 71, Exhibit 17, pp. 13-14).

Eric Brashear, a Nevada resident, contacted the Michigan brokerage firm in search of a boat. Apparently he was considering a purchase arrangement with Plaintiff. When he was advised that the vessel was missing, he volunteered to regain its custody (Docket No. 71, Exhibit 17, p. 14). Plaintiff signed the partnership vessel agreement. Eric Brashear did not sign the partnership vessel agreement (Docket No. 71,

3

Exhibit 11). Since the Michigan brokerage firm had financial difficulty, Eric Brashear brokered the vessel to Defendant Lopez with Plaintiff's consent (Docket No. 71 Exhibit 17, pp. 14-16).

On May 14, 2006, Defendant Lopez endorsed a partnership vessel agreement and took possession of the Baja. Defendant Lopez, too, agreed to pay $105,000, name himself as "primary operator" with Plaintiff as the additional insured and Key Bank, the lien holder, as loss payee (Docket No. 71, Exhibit 12).

On June 1, 2006, Defendant Lopez, representing himself as selling partner, brokered a partnership vessel agreement with Defendant Nieves. Defendant Nieves purchased the Baja for $52,500 and agreed to name himself as the primary operator with Defendant Lopez as the additional insured and the lien holder, Key Bank, as loss payee (Docket No. 71, Exhibit 8).

Defendant Nieves' spouse requested a quote for the cost of vessel insurance from Yanet Cisneros, an underwriter/customer service representative for Avante Insurance Agency (Avante) (Docket No. 71, Exhibit 16, p. 24). On June 6, 2006, Yanet Cisneros processed the Nieves' file and proceeded to obtain a carrier to issue the policy for hull, personal property and liability protection. Yanet Cisneros submitted the application to Hull & Company (Hull), a duly licensed wholesale broker of surplus lines (Docket No. 1, ¶ 10; Docket No. 71, Exhibit 4; Exhibit 14, ¶ 19 & Exhibit 17, pp. 11-13 of 30). Hull personnel submitted the request to T. L. Dallas (Special Risks) Ltd., (TLD), an underwriter authorized to receive and evaluate applications for marine insurance coverage that Defendant Great Lakes could write (Docket No. 71, Exhibit 14, ¶s 7 and 22). Acting at the direction of Hull, Paul Young, a broker employed by Houlder Insurance Services (Marine), an independent broker located in London who provides insurance for shipowners, also submitted an application for a quotation of marine insurance to TLD in which Defendant Nieves is identified as the insured (Docket No. 71, Exhibit 5; Exhibit 14, ¶ 11, www.houlder.co).

On June 7, 2007, Liam Gilhooly, TLD's representative, presented to Paul Young, by electronic mail,

4

a quotation which was valid for sixty days. Defendant Nieves was the sole insured and Defendant Great Lakes was the insurer, offering hull, personal property and liability coverage. The significant sum insured limits were (1) $100,000 on the hull; (2) $300,000 in personal property and liability protection; (3) $5,000 in medical payments, (4) $25,000 for losses sustained by uninsured boaters, (5) $5,000 on the trailer and (6) $4,500 for loss of personal property. The annual premium was $4,515(Docket No. 71, Exhibit 6). Defendant Nieves endorsed an application for "yacht insurance" on June 19, 2006, representing that he was the sole insured and there was no identifiable loss payee or beneficial owner (Docket No. 71, Exhibit 4). TLD agreed to issue Defendant Great Lakes marine insurance affording coverage to Defendant Nieves for hull and machinery coverage on the 1998 36 foot Baja in the amount of $100,000 for the period of July 21, 2006 through July 21, 2007 (Docket No. 71, Exhibit 14, ¶ 31).

Defendant Great Lakes was notified on May 7, 2007, through the insurance broker for Defendants Nieves and Lopez that the location of the vessel was unknown and had in all likelihood been stolen (Docket No. 1, ¶ 13). Defendant Great Lakes initiated an investigation (Docket No. 1, ¶ 14). TLD also conducted an investigation (Docket No. 71, Exhibit 14, ¶ 33).

## IV. PROCEDURAL BACKGROUND

Defendant Great Lakes filed a declaratory judgment action in the Southern District of Florida. The Clerk's Office for the Southern District of Florida advised that the action was dismissed (Docket No. 1, ¶s 17 & 18). Plaintiff filed a complaint in this Court (Docket No. 1). Defendants Nieves and Lopez filed an answer (Docket No. 13). Defendant Great Lakes filed an answer and counterclaim against Plaintiff and cross-claims against Defendants Nieves and Lopez (Docket No. 24). Plaintiff filed a response to the counterclaim of Defendant Great Lakes (Docket No. 53). Defendant Great Lakes' Motion for Summary Judgment (Docket No. 71) was denied pursuant to Memorandum Decision and Order entered March 16,

2010 (Docket No. 75). Pending is Defendant's Motion for Rehearing on Order Denying Motion for Summary Judgment (Docket No. 78), Plaintiff's Opposition to Defendant's Motion for Rehearing on Order Denying Motion for Summary Judgment and Plaintiff's Motion to Alter or Amend Judgment (Docket No. 79).

## V. STANDARD OF REVIEW FOR THE MOTION FOR REHEARING

Defendant Great Lakes requests that this Court alter the Court's judgment pursuant to FED. R. CIV. P. 59(e). FED. R. CIV. P. 59(e) states that "any motion to alter or amend judgment shall be filed no later than twenty-eight days after entry of judgment." The Sixth Circuit has held that a Rule 59(e) motion "may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *Caldwell v. Altriere,* 2010 WL 768184, *2 (N. D. Ohio 2010) (*citing Gencorp v. American International Underwriters,* 167 F.3d 249, 275 (6th Cir. 1999) (citations omitted)).

Defendant Great Lakes has not identified an intervening change in controlling law or new evidence that was unavailable at trial. Defendant Great Lakes has asserted that this Court committed fundamental errors of law. Defendant Great Lakes suggests that reconsideration of the Court's decision is imperative to prevent manifest injustice. As such, to prevent manifest injustice, this Court shall revisit the arguments raised by Defendant Great Lakes in the context of the Motions for Summary Judgment.

## VI. DEFENDANT GREAT LAKES' POSITIONS.

Defendant Great Lakes contends that the insurance policy at issue was a maritime contract within federal admiralty jurisdiction and that the established, entrenched federal doctrine of *uberimmae fidei* or good faith with which a contract is made, is controlling. Defendant Great Lakes insists that it may avoid the insurance contract in this case as the party procuring insurance misrepresented facts material to the risk. In the event there are questions about contract interpretation, the Court should consult Florida law where

the interests of the parties arose.

### VII. PLAINTIFF'S POSITIONS.

Plaintiff argues that the application is ambiguous with respect to proof of ownership of the boat. Since Defendant Great Lakes cannot establish that Defendant Nieves's purported misrepresentations were material, Defendant Great Lakes may not avoid its obligation to pay under the terms of the contract of insurance. Alternately, Plaintiff contends that the Court erred in concluding that a reasonable person would not have interpreted the question as Defendant Nieves did.

### VIII. DISCUSSION.

In the insuring instrument, there is a "choice of law" clause that indicates that any dispute is subject to substantive United States admiralty law (Docket No. 71, Exhibit 3, p. 15 of 15). Accordingly, the Magistrate presumes that Defendant Nieves and Defendant Great Lakes are parties to a marine contract.

The Supreme Court has embraced the doctrine of *uberrima fidei*, which obligates the parties to a marine insurance policy to accord each other the highest degree of good faith, and concealment. In the law of marine insurance, a failure to disclose any material fact or circumstance in relation to the subject matter of the contract which may increase the liability to loss, or affect the risk or obligation assumed, and which is, in fact or law, within, or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge. *McLanahan v. Universal Insurance Company*, 1828 WL 2992, *14 (1828). In the case of marine insurance the insured must disclose all facts material to the risk. Any misrepresentation in the application for insurance is manifest fraud, which voids the policy. *Id.*

In this case, Defendant Great Lakes relies on the affidavit and/or deposition of Beric Anthony Usher, managing director and senior underwriter for TLD. He concludes that a reasonable or prudent marine underwriter would not have agreed to issue any policy if the current ownership of the boat, the chain of

ownership and the financial terms had not been disclosed (Docket No. 71, Exhibit 14, ¶s 35, 36 & 37 and Exhibit 15). However, the yacht application in this case is not so plain that any applicant would easily comprehend that he or she was required to disclose ownership of the boat. The application requests that the applicant identify the "insured." The beneficial owner was to be identified if the policy was to be issued in a company name. There is nothing on the application that requires the applicant to identify the owner of the vessel that was to be insured. Defendant Great Lakes cannot avoid the insurance contract on the basis that Defendant Nieves misrepresented the owner of the boat.

Next, Defendant Great Lakes argues that Defendant Nieves disclosed that he paid $109,000 for the boat. Again, relying on the affidavit of Beric Usher, Defendant Great Lakes construed this representation that Defendant Nieves purchased the vessel for $109,000 (Docket No. 71, Exhibit 14, ¶ 11). Plaintiff contends that the Magistrate should amend her finding that a reasonable person would not have interpreted the question as Defendant Nieves did. The vessel had recently been purchased for $105,000. The difference between $105,000 and $109,000 is insignificant. Moreover, the yacht application is intentionally fraught with vague statements and ambiguous questions. If there is no representation, then Defendant Great Lakes cannot avoid the contract.

The Magistrate reiterates her earlier finding. Defendant Nieves agreed to purchase the vessel for $52,500. **He** never consummated a sale of the vessel for $105,000 or $109,000. When the policy was issued, he never supplemented the application with the correct purchase price. Defendant Nieves could not recall whether he told anyone at Avante that he purchased the vessel for $109,000 (Docket No. 71, Exhibit 16, p. 15 of 25). In his deposition or pleadings, Defendant Nieves never provided an explanation for reporting that the purchase price was $109,000. A reasonable person would have realized that increasing the value would have significantly affected the risk or obligation assumed by Defendant Great Lakes. This

evidence supports the Magistrate's finding that Defendant Nieves misrepresented the purchase price on the yacht application. This representation is apparently all that is needed to violate the good faith requirement. Accordingly, the misrepresentation about the purchase price is sufficient for the Magistrate to find the policy void *ab initio*.

## IX.  CONCLUSION

For these reasons, the Magistrate amends the Memorandum Decision and Order denying Defendant Great Lakes' Motion for Summary Judgment (Docket No. 75), grants Defendant Great Lakes' Motion for Summary Judgment (Docket No. 71) and denies Plaintiff's Motion to Alter or Amend Judgment (Docket No. 79). Consequently, Defendant Great Lakes' Counterclaim against Plaintiff and the Cross-claims against Defendants Nieves and Lopez are moot (Docket No. 24).   This case is dismissed.

**IT IS SO ORDERED**.

/s/Vernelis K. Armstrong  
United States Magistrate Judge

Date:   March 30, 2011